IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL STEPHEN JOHNSON,

    Defendant.

Case No. 6:14-cr-00482-MC

ORDER RE: PRE-TRIAL CONFERENCE & MOTIONS

MCSHANE, Judge:

Before this court are parties' pre-trial motions in limine, notices of evidence and expert witnesses, and other pre-trial motions. The court has reviewed all of the submitted written briefing and heard oral arguments on the 23rd and 24th of April 2018, and makes the following findings and rulings:

**I. Motions in Limine**

**A. Government's "omnibus" Motions in limine (ECF No. 151)**

1. Motion to limit references by the defense to the age of consent in Cambodia: Defense does not contest the issue and no order is necessary

2. Motion to limit references by the defense to Plea negotiations that might have occurred: Defense does not contest the issue and no order is necessary.

3. Motion to limit references by the defense to other charges or purported motive of the Government: The defense does not intend to comment on prosecutor's motive for bringing charges or suggest vindictive prosecution. The defense agrees that they are not seeking to admit into evidence the charges of or the investigation into allegations of child sex abuse by Mr. Johnson in the United States (Lincoln and Yamhill county charges).

1 – ORDER RE: PRE-TRIAL CONFERENCE & MOTIONS

4. Motion to limit references by the defense to offers to stipulate: Defense does not contest the issue and no order is necessary.

5. Motion regarding undisclosed defense exhibits: Defense is ordered to disclose exhibits with the exception of impeachment exhibits.

6. Motion to limit references to potential punishment or defendant's personal background: The motion is granted with regard to references in front of the jury as to potential punishment. Mr. Johnson may, however, introduce material, non-cumulative personal background that is relevant to his motivation for traveling and working in Cambodia.

7. Motion to limit references to defendant's health: Defense does not contest the issue and no order is necessary.

8. Motion to limit introduction of specific Instance Character evidence: Defendant may not introduce specific instances of conduct to prove character (for example, his character for sexual propriety around children or honesty), but defendant may offer general reputation and opinion evidence from others who can testify as to his character for sexual propriety around children or honesty. This, of course, opens those witnesses to cross on specific allegations of sexual misconduct in Cambodia and in the United States and may open the door to cross based on the photos found on his phone. Defense may also offer material, non-cumulative testimony regarding the kind of work that Mr. Johnson did in Cambodia, including missionary work and charitable work, as it relates to his motivation for traveling to Cambodia and setting up Hope Transition Center.

9. Motion to limit references of Administrative Discipline: The court will defer any ruling on this matter until such a time that the defense seeks to introduce.

10. Motion to exclude alleged victims sexual behavior evidence: Conditionally granted at this time. Defense may raise issue outside presence of the jury at a later time if they seek to introduce such evidence.

11. Motion to exclude exculpatory hearsay: The court assumes that the parties will not seek to introduce hearsay, exculpatory or otherwise.

12. Motion to limit reference to a lack of domestic criminal convictions: In general, the defense may not comment on the fact that the defendant is "crime free" and has never been convicted of a crime of sexual abuse. The defense may not do so here.

**B. Governments motion to admit "other act" evidence as outlined in the government's Notice of Evidence under FRE 404(b), 413, and 414 (ECF No. 152)**

1. Defense request for a Bill of Particulars (Response to Govt.'s Motion in limine, pg. 2; ECF No. 154) arguing that the evidence should be limited to the specific act against the specific victim that gives rise to the individual counts of the superseding indictment. A decision to order the prosecution to comply with a bill of particulars is left to the discretion of the trial court. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). It is particularly appropriate in those cases in which the discovery is either incomplete or so vast that a defendant cannot be expected to adequately understand the nature of the charges against him and consequently, cannot adequately prepare a defense. *Id*. Here, the indictment and the discovery set forth the time frame of the sexual abuse, the specific victims, and the nature of the alleged sexual misconduct. Mr. Johnson has framed a defense that none of the abuse occurred. The defense request for a Bill of Particulars is denied. The court will entertain a motion to elect following the government's case in

chief and will instruct the jury appropriately regarding the need to reach a unanimous decision regarding each particular allegation.

In addition, counts 7 and 8 do not require a specific victim. Count 7 and 8 are charges of crimes that are inchoate in nature, criminalizing the act of travel with the intent of engaging in illicit sexual conduct. There will be a unanimity instruction given directing the jury that they must agree as to a particular travel event.

2. With regard to "other act" evidence specifically, the government seeks to introduce the following evidence under federal rules of evidence 404(b), 413, or 414:

(1) evidence of Mr. Johnson's sexual abuse of children in Cambodia outside of the specific instances alleged in the indictment; (2) evidence of Mr. Johnson's sexual abuse of children in the United States; (3) testimony from adults who either witnessed Mr. Johnson's behavior or in whom his victims confided; (4) evidence of Mr. Johnson's facilitation of his crimes through frightening, intimidating, grooming, or bribing his victims; (5) evidence of potential child pornography recovered from Mr. Johnson's digital media; and (6) evidence of Mr. Johnson's efforts to obstruct justice by bribing or tampering with victims and witnesses.

**a.** The first motion is a motion to allow the introduction of evidence that Mr. Johnson engaged in multiple sexual encounters in Cambodia with the alleged victims, as well as with other children in Cambodia who are unnamed in the indictment but are similarly situated to the alleged victims. The evidence is admissible under FRE 404(b) for purposes of showing Mr. Johnson's intent or motive for traveling to Cambodia, as well as under FRE 413 and FRE 414 in that they are evidence of sexual assault and sexual molestation. The acts go directly toward a material issue in the case; the acts are not

4 – ORDER RE: PRE-TRIAL CONFERENCE & MOTIONS

remote in time; there is sufficient evidence to support a finding that the acts were committed; the acts are similar in nature to the offense charged. The highly probative nature of the evidence is not outweighed by its prejudice.

**b.** The second motion is to allow evidence of Mr. Johnson's sexual abuse of children in the United States. The government intends to offer the testimony of two of Mr. Johnson's nephews, Ben and Kevin Jaeger. They would testify that they were sexually abused as children by Mr. Johnson. The government claims this testimony is relevant for the following reasons: his identity as the sexual abuser of children (this is the definition of propensity evidence), his *modus operendi* (this is not something that has adequately been established by the record), and absence of mistake or lack of accident in abusing the boys in Cambodia.

Here, the probative value of evidence that Mr. Johnson may have abused boys in the distant past in the United States is outweighed by its prejudicial impact. With the defense now agreeing it will not link the prosecution of Mr. Johnson to the investigation in Cambodia, the sole purpose of the evidence appears goes toward the propensity of Mr. Johnson to engage in such acts. As discussed on the record, the acts are not similar in nature to the acts alleged to have been committed in Cambodia and they are distant in time.

Because defense withdraws their defense that events in the United States contaminated the investigation in Cambodia (Response to Government's Motions in Limine, pg.'s 3, 7, & 12; ECF No. 154) the government will not need to introduce such rebuttal evidence. The fact that Mr. Johnson had an outstanding warrant in Oregon is

relevant to the genesis of his arrest in Cambodia and the subsequent investigation into child sex abuse there. The basis for the warrant is immaterial.

  **c.** The third motion is a motion to allow testimony from other adults who witnessed behavior or who are privy to statements of victims. This evidence is relevant to lack of mistake and opportunity. The observations of certain behavior around children by witnesses rebut the defense that Mr. Johnson's accusers were biased and motivated to accuse Mr. Johnson for other reasons. The observations support evidence of grooming. Statements made by victims to others are admissible as prior consistent statements. Hearsay statements of children who are not testifying are not admissible.

  **d.** Motion to allow evidence of facilitation of crimes through frightening, grooming, or bribing victims: This evidence is relevant to corroborate victim testimony and to rebut the defense that victims are motivated by receiving benefits from the government.

  **e.** Motion to allow evidence of digital depictions of child pornography: discussed in the following section C: Defendant's motions in limine.

  **f.** Motion to allow evidence of Mr. Johnson's attempts to tamper, bribe, or obstruct justice: The evidence is admissible to show consciousness of guilt.

**C: Defendant's Motions in Limine**

1. Defense's Motion in Limine to exclude references to prejudicial titles which vouch for the credibility of government witnesses (ECF No. 141): Granted in part and denied in part. Both sides are directed to do their best to use proper names rather than terms such as "defendant" and "victim." The government may argue that the children named in the indictment are victims and may use more generic terms than the language of the

indictment. This includes terms such as "child abuse" or "child sex abuse." Law enforcement agents may testify about any special unit they are assigned to and the training that they received as part of that assignment, but should avoid using the names of those units, such as the FBI's "Violent Crimes Against Children section." The jury is entitled to understand the specialized work that they engage in and the training that they receive as part of that specialized work. Trial counsel for the government should not reference the fact that they are with a particular unit specializing in this kind of prosecution.

2. Motion to exclude prior conviction of Mr. Johnson (ECF No. 142): Granted. Evidence of Mr. Johnson's 1997 Burglary conviction is excluded.

3. Motion in Limine for Pretrial *Daubert* Hearing (ECF No. 143): Both sides have given notice of their intent to call witnesses to speak to 1) cultural issues specific to Cambodia, and 2) issues specific to children in the context of child sexual abuse. The limits on some of these witnesses are discussed below, but their testimony does not require a *Daubert* hearing.

FRE 702 allows for expert testimony if it will help the jury to understand the evidence or to determine a fact in issue. Here, both sides are calling experts who are providing their specialized knowledge as to issues pertinent to Cambodian culture and child sexual abuse. This is not a case where the experts' scientific or technical methods are being called into question and neither side has questioned the credentials of the other side's experts. After reviewing the pleadings, both sides have presented experts with sufficient education and background to testify to these matters. These are matters of specialized knowledge that would typically come into evidence in a trial such as this.

All that being said, if either side wishes to question the qualifications of the expert (the experts training and education and experience) they may do so outside the presence of the jury before the expert testifies. In addition, defense calls into question the science underlying Dr. Goodman's expert testimony, specifically, whether the science she relies on is relevant and applicable to the specific culture of Cambodia and Southeast Asia. A brief *Daubert* hearing prior to Dr. Goodman testifying will be conducted for defense to explore those issues.

4. Motion in Limine to admit prior inconsistent statements (ECF No. 144):  Granted.

    After laying the necessary foundation, defense may move to admit any prior inconsistent statement consistent with FRE 801(d)(1) or may impeach a witness with a prior inconsistent statement consistent with  FRE 613.

5. Motion in Limine to Exclude Overwritten Images (ECF No. 145):

    With the one exception discussed during the pre-trial conference, digital images found on Mr. Johnson's phone are excluded from evidence until further order of the court. The court believes that a jury could reasonably infer that the images the state seeks to introduce are consistent with child pornography. However, the images are of poor quality because they are overwritten. Additionally, it is not clear who took the pictures in the images, where they were taken, and when they were taken. It is not clear who is depicted in the images. The fact that they exist on a phone manufactured in 2011 does not mean that they were not transferred from an earlier device or taken in the distant past.

    The mere possession of these images without more context does not support the government's contention that Mr. Johnson's motive or intent for traveling to Cambodia was to sexually abuse children and are therefore admissible under FRE 404(b). There is a

great risk that the jury will assume that the pictures show that Mr. Johnson has a propensity to commit the acts that are suggested by the photos.

The act of possessing these photos may well constitute the crime of possession of child pornography. But even if it is reasonable to make that assumption, it does not truly corroborate the victim's testimony or tend to prove a material fact. The act of possessing the images may fit the definition of an act of child molestation under FRE 414, but possession is dissimilar in nature to the allegations charged in the superseding indictment. This is one of the *LeMay*[1] factors and probably the most significant. Without any context to when the photos were taken and by whom, it is also hard to make a finding under *LeMay* that the acts were close in time. Finally, *LeMay* asks the court to balance the necessity of the evidence against the need for the evidence in light of other evidence presented by the government. Here, the testimony of the victims and other children allegedly molested by Mr. Johnson is much stronger evidence as to his intent and motive for traveling to Cambodia. The court will not admit the photos as propensity evidence under FRE 414.

There is still the possibility defense may open the door to the images becoming admissible. Any character evidence by way of opinion or reputation that Mr. Johnson is sexually appropriate around boys would open the door to the cross of those witnesses with the photos on his phone. Any testimony by Mr. Johnson or others that he has no sexual interest in boys will likely open up the door to the contents on his phone. Testimony regarding his strong Christian beliefs might even open the door. If a defense expert testifies that Mr. Johnson's behavior and activities with Cambodian boys is

---

[1] *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001).

culturally appropriate, then it is conceivable that the expert could be impeached with the photos that Mr. Johnson kept on his phone.

With regard to the images then, we will take a wait and see approach. If, at a later time, the government believes that the testimony at trial reveals greater relevance, we can take the issue up at that time. One photograph is taken as an exception. The government contends that the one photograph appears to corroborate a victim's testimony, and that singe image is allowed at this time.

6. Motion in Limine to Exclude Cambodian Conviction (ECF No. 146): Granted. The government does not contest this issue.

## II. Expert Witnesses

### A. Government's notice of expert witnesses

1. Testimony of prosecution witness Brian Poole regarding the forensic capture of the images of the images of children on Mr. Johnson's phone. These are the images with photo overlays that I have deferred ruling on. Mr. Poole may testify if the images become relevant at trial and are to be admitted into evidence. He may lay a foundation or testify as to the single image that is being allowed into evidence.

2. Testimony of prosecution witness Dr. Gail Goodman:

    Dr. Goodman may testify as to those areas that would be assist in helping the jury understand aspects of child sexual abuse that are relevant to this case. These topics include the following sections in the United States Notice of Expert Witness Gail Goodman: Section d/e/f/g/h/i/j. Dr. Goodman may not testify to the common victim behaviors and common victim reactions to child sexual abuse as outlined in section a, b, and c. It allows an expert to suggest to the jury that because the alleged victims are acting

in conformity with other victims of child sex abuse, they must be telling the truth. This is an area for the jury to decide. Such testimony borders on vouching for the victims in this case. Dr. Goodman may not directly comment on the evidence in this case or offer an opinion regarding the evidence in this case or comment on the issue of guilt. She can speak generally about aspects of child sexual abuse but cannot draw specific comparisons to the evidence. Dr. Goodman should also not testify about "horror stories" or lengthy facts about other sex abuses cases. Facts of other discreet cases do not assist the jury.

3. Testimony of prosecution witness Laro Tan:

The government agrees to withdraw Mr. Tan's area of testimony regarding section a, b, and c.

a. Age verification techniques are not in issue and are not probative of a material issue of fact in the case.

b. The difficulties and obstacles into the investigation of child sex tourism crimes in Cambodia are not probative of any material fact at issue in the case.

c. Record keeping practices regarding public records and vital statistics are not probative of a material fact at issue in this case.

d. He may be able to testify as to why the conditions in Cambodia are such that someone motivated to engage in child sexual abuse would target such a country: historic, cultural, economic, geographic, and governmental conditions that would make Cambodia an ideal venue for one intent on molesting children. I think that it is important for the jury to understand the unique aspects of the country in terms of this issue. However, testimony should be general in nature.

4. Testimony of prosecution witness Martha Finnegan:

Her testimony may assist the jury in determining the quality of the interviews of the children at various times in the investigation and why there are certain protocols in place for getting more accurate information.

**III. Defense notice to that they will be offering evidence of the child victim's prior sexual behavior under FRE 412(b)(1).**

Evidence that some of the minor children who lived at Hope Transitions engaged in sexual activity with each other is of little probative value to the defenses proffered by Mr. Johnson and, on balance, would serve to embarrass, harass, and intimidate the child witnesses.

Defense first asserts that the sexual activity of the boys at Hope Transitions is relevant to impeach the testimony of two of the boys: minor #1 and Sopheak Vanna.

Minor #1 Claims to have had a discussion with Mr. Johnson in July of 2013 in which he confronted Mr. Johnson about Johnson's sexual abuse of minor #4 and minor #2. After that conversation, according to Minor #1, Mr. Johnson said he wanted to change his life and not abuse children anymore. The defense alleges that this conversation did not take place or, if it did, Minor #1 was referencing someone else and not Mr. Johnson as the abuser. These questions can be asked of Minor #1 without reference to the sexual activity of any of the children at Hope Transitions. There is simply no logical nexus between Minor #1's account of the conversation and the sexual activity of the other children.

Sopheak Vanna will testify that Minor #2 disclosed to him that Mr. Johnson had sexually abused Minor #2 and that when the Mr. Johnson and Minor #2 were together in the mornings, Mr. Johnson would apologize for his conduct by saying the word "sorry." The court assumes that Mr. Vanna's testimony is being offered as a prior consistent statement and that Minor #2 will testify in court. The fact that Mr. Vanna was aware that other children had engaged in sexual conduct is irrelevant to his testimony about the conversation he had with Minor #2.

Of course defense may cross a witness with their prior inconsistent statements. And government may re-cross with their prior consistent statements.

The fact that Hope Transitions had rules forbidding the minor children from having consensual sexual contact and that some boys violated this rule and were disciplined is not probative of whether Mr. Johnson sexually abused children at Hope Transitions. Defense counsel suggests that some of the children who are testifying against Mr. Johnson are motivated to lie because they were disciplined for breaking this rule and they harbored resentment against Mr. Johnson. Here, the children can be asked about any discipline they received from Mr. Johnson for breaking rules and if they harbored any resentment. They need not be asked about a specific rule having to do with their sexual conduct with other boys.

The defense next suggests that the abuse or sexual contact between the boys at the center could be an alternative explanation to that given my Dr. Goodman; specifically, that the responses of the children are consistent with abuse suffered at the hands of Mr. Johnson. I have already ruled that Dr. Goodman may not comment on the facts of this case and may not testify as to common victim behaviors and common victim reactions to child sexual abuse as outlined in section a and b and c of the government's notice to call Dr. Goodman as an expert.

Finally, the defense alleges that the prior sexual activity of the minors provides an alternative explanation for the sexual knowledge of the victims. The victim's knowledge of sex based on their previous sexual activity with others is not probative of whether they were sexually abused by Mr. Johnson. "Trial judges retain wide latitude to impose reasonable limits on such cross examination based on concerns about harassment, witness intimidation, prejudice, confusion of the issues, the witnesses' safety, or cross that is marginally relevant." *Delaware v. Van Ardall*, 475 US 673 (1986)

*LaJoie v. Thompson,* 217 F.3d 663 (9th Cir. 2000) does not stand for the proposition that every time the defense wishes to impeach a victim regarding sexual knowledge, the rape shield law must give way to the defendant's constitutional right to examine a witness. The court must conduct some balancing to determine if the purpose of the rape shield statute is disproportionately outweighed by the probativeness of the evidence in a particular case. In *LaJoie*, the victim was seven years old and the evidence of prior sexual activity was that she had been previously raped by and sexually abused by others. The court found that this prior sexual abuse was relevant to provide an alternative explanation to the medical evidence and to provide an explanation as to a seven year old victim's knowledge and experience with male genitalia and rape. The court went on to hold that "The evidence is distinguishable from evidence of an adult or sexually-mature minor's sexual history which could be improperly used by the jury in deciding whether she was raped. Rather, the evidence in this case concerned non-consensual sexual abuse of a young child; thus, the jury was unlikely to draw an unfavorable and unwarranted impression of the alleged victim."

On balance, the interest of Mr. Johnson in presenting such evidence is outweighed by the protections afforded victims of sexual assault in the Rape Shield Statute.

### IV.  Mr. Johnson's *pro se* motion to suppress evidence

Defendant's *pro se* motion to suppress fruits of joint venture (ECF No. 156) is denied. A separate brief opinion will be filed.

### V. *Voir Dire*

In my courtroom the attorneys conduct voir dire. You will have the questionnaires prior to voir dire and I expect that you will want to follow up on individual answers to individual questions.

We will bring up jurors in groups of 16. If an individual juror does not wish to answer certain questions in front of other jurors, we will take up individual questioning at the end of the group questions. The panel of 16 will wait in the jury room while we call individual jurors in for questions. When we are done with a panel of 16 jurors, we will have them wait in the jury assembly room on the second floor until we have enough available jurors to proceed with peremptory challenges.

Following for cause challenges, we will need a jury of 35 potential jurors in order to exercise maximum peremptory challenges.

We will have three alternate jurors.

We will first select the 12 designated jurors. Defense will have 10 peremptory challenges and the government will have six. From the remaining pool, we will then select the 3 alternate jurors. Each side will get an additional 2 peremptories for challenging potential alternates.

I do not allow questions that are intended to do anything other than explore the juror's qualifications and biases. Questions meant to educate the jury as to the law or facts of the case or questions that are intended to condition the jury or exact a promise from them are not allowed. The defense may do some limited questioning of the jurors with regard to their views of proof issues such as proof beyond a reasonable doubt, presumption of innocence, and right not to testify.

Strike defense question 48.

Strike defense question 50 as exacting a promise from a juror.

Strike defense questions 55, 56, 57, and 59 as conditioning jury to facts of this case and not relevant to juror's qualifications or bias.

Strike defense questions section E regarding the role and process of the grand jury. It does not go toward the juror's qualifications or bias. I do not plan on sending the charging instrument back to the jury or having anyone discuss the mechanism of indictment. If this issue is somehow put before the jury, defense can explain process in argument or I can give an instruction, but I am cautioning both sides not to refer to the charges as having come from a "grand jury indictment" or that Mr. Johnson was indicted by a grand jury. It has no relevance. The indictment process is a procedural safeguard for the defendant and should not bolster the position of the prosecution in the eyes of the trial jury.

Strike government's questions 6 and 7. Parties should avoid questions about the jurors' "expectations."

## VI. Jury instructions and verdict form.

I do typically present a draft set of instructions and verdict form to you after I have a better sense of the evidence as presented at trial. If you must reference a particular instruction in opening, you should clear that instruction with me in advance. Otherwise, you can expect a draft set of instructions sometime after the government rests. I will give both sides the general instructions that I will read to the jury prior to opening statements.

The applicable venue provision for counts 1 – 6 in this case is 18 U.S.C. § 3238. Government does not need to prove Section 3237 venue for counts 1 – 6.

IT IS SO ORDERED.

DATED this 25th day of April, 2018.

                                                          s/Michael J. McShane
                                                          Michael J. McShane
                                                          United States District Judge