IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL JOHNSON,

    Defendant.

Case. No. 6:14-cr-00482-MC

ORDER

MCSHANE, Judge:

After eleven days of trial in May of 2018, a jury found Defendant Daniel Johnson guilty of crimes involving the sexual assault of multiple children in the Kingdom of Cambodia. As to Counts 1 through 6 of the Superseding Indictment, the jury found Mr. Johnson guilty of "traveling in foreign commerce and engaging in illicit sexual conduct in a foreign place" in violation of Title 18, U.S.C. § 2423(c) and (e)." Verdict Form 1–4, ECF No. 234.

Following Mr. Johnson's convictions and prior to the imposition of sentence, the Ninth Circuit clarified the scope of § 2423(c) in *United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018). Mr. Johnson now argues, among other things, that he is entitled to a new trial or post-verdict acquittal because he was a resident of Cambodia at the time of the sexual assaults and that *Pepe* requires that the illicit sexual conduct occur during a period of travel. Def.'s Mot. 1–2, ECF No. 267. Because the evidence at trial supported a finding that Mr. Johnson was guilty of "traveling in foreign commerce and engaging in illicit sexual conduct in a foreign place," Mr. Johnson's motion is DENIED.

1—ORDER

## STANDARDS

A court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for a new trial should only be granted in exceptional cases "in which the evidence weighs heavily against the verdict." *See United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012). A court also may set aside a guilty verdict and enter an acquittal. Fed. R. Crim. P. 29(c). A court may do so where, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted); *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).

## DISCUSSION

### I. The "Travel" Element

Mr. Daniel Johnson is a U.S. citizen. Def.'s Mot. 6. At trial he stipulated that his last known domestic residence was in the State of Oregon. *Id.*; Jury Instructions 20, ECF No. 230. Although he travelled extensively to and from Cambodia, he maintained an Oregon driver's license, listed Oregon as his permanent address on his U.S. Passport, held a bank account in Oregon, applied for credit using his Oregon address, and owned a car in Oregon. Gov.'s Resp. 6–8, ECF No. 292.

The evidence at trial did not support Mr. Johnson's contention that he was a resident of Cambodia. Mr. Johnson stipulated that between November of 2005 and January of 2011, he travelled back and forth between the United States and Cambodia numerous times:

> Mr. Johnson traveled in interstate and foreign commerce between the United States and Cambodia between on or about the following dates:
>
> • November 28, 2005 (departing the U.S.) - December 6, 2005 (arriving in Cambodia)
> • January 11, 2007 (departing the U.S.) - January 12, 2007 (arriving in

Cambodia)
• October 10, 2008 (departing the U.S.) - October 11, 2008 (arriving in Cambodia)
• October 22, 2009 (departing the U.S.) - October 23, 2009 (arriving in Cambodia)
• June 8, 2010 (departing U.S.) - June 10, 2010 (arriving in Cambodia)
• January 18, 2011 (departing the U.S.) - January 19, 2011 (arriving in Cambodia).
...
Mr. Johnson was present within the District of Oregon and then traveled in interstate and foreign commerce between the United States and Cambodia on or about the following dates:

• June 21, 2011 (in Oregon); July 5, 2011, (departed the U.S.) - July 7, 2011 (arrived in Cambodia)
• December 1, 2011 (in Oregon); December 20, 2011 (departed the U.S.) - December 22, 2011 (arrived in Cambodia)
• July 24, 2012 (in Oregon); August 24, 2012 (departed the U.S.) - August 27, 2012 (arrived in Cambodia)
• November 19, 2012 (in Oregon); December 5, 2012 (departed the U.S.) - December 7, 2012 (arrived in Cambodia)
• May 28, 2013 (in Oregon); May 29, 2013 (departed the U.S.) - May 30, 2013 (arrived in Cambodia).

Jury Instructions 20–21.

In addition to the stipulated travel, the evidence established two additional trips during this same time period, as well as approximately thirty trips to Vietnam and Thailand. Gov.'s Resp. 6.; *see* Def.'s Mot. 3. In his application forms for passports and visas documents, he continued to list his permanent address during the relevant time period as 63341 Shasta Road in Coos Bay, Oregon. Gov's Resp. 7. In 2006, he stated that he would be traveling for four months in Cambodia, Thailand, Taiwan, and Vietnam in an application form he submitted to the U.S. government. *Id.* In 2010 and 2013 he stated in similar applications that he was traveling in the same countries for a six-month period. *Id.*

Mr. Johnson's ongoing travel between the United States and Cambodia was consistent with his purported role as a missionary. While in Cambodia, Mr. Johnson would preach, engage

3—ORDER

in building projects, and maintain an unlicensed orphanage for select children whose parents lacked the finances to raise them. *See* Def.'s Mot. 3, 6. To finance the orphanage, he would regularly return to Oregon and Texas to raise funds. *See* Def.'s Mot. 2. Sadly, the institution he was financing was one where the boys under his charge were subject to Mr. Johnson's sexual predation. The evidence at trial established that young boys were subject to repeated acts of oral and anal rape with systematic regularity. In at least one instance, we know that a boy who refused to sexually pleasure Mr. Johnson was evicted to the streets. Mr. Johnson took advantage of the most vulnerable residents of a country whose government is either unable or unwilling to defend them. To say he was a resident of Cambodia would be calling the fox a resident of the henhouse.

The facts that were presented to the jury in Mr. Johnson's case are not a reproduction of the facts in *United States v. Pepe*. 895 F.3d 679 (9th Cir. 2018). *Pepe* is instructive in that it illustrates the limitation on the prosecution of American citizens who live abroad and commit sex crimes against children. What is clear from the holding in *Pepe* is that prior to its amendment in 2013,[1] § 2423(c) did not extend to citizens who were merely living abroad; rather, it was aimed at prosecuting citizens who were traveling when they committed illicit sexual conduct. *Pepe*, 895 F.3d at 682. The focus of the statute is not on residency, but on travel. *See id.* at 691 (holding that "a conviction under § 2423(c), when based on a defendant's travel in foreign commerce, requires proof that the illicit sexual conduct occurred while the defendant was traveling.").

Mr. Pepe travelled from the United States to Cambodia in March 2003. *Pepe*, 895 F.3d at 682. He gave away his vehicle, his computer, and other valuable items before leaving the United

---

[1] Section 2423(c) originally targeted only U.S. citizens who resided in the United States, traveled overseas, and committed sex crimes with minors. *Pepe*, 895 F.3d at 687. Congress' March 7, 2013 amendment expanded the statute to encompass U.S. citizens who temporarily or permanently relocated overseas. *See id.*

4—ORDER

States. Appellant's Reply Brief at 11 n.28, *Pepe*, 895 F.3d 679 (No. CR-07-00168-DSF). He rented a house, obtained a Cambodian driver's license, bought a car, got a job teaching at a university, became involved with the Phnom Penh Veterans of Foreign Wars Post and the local Catholic Church, and married a Cambodian woman. *Pepe*, 895 F.3d at 682. He occasionally returned to the United States to visit family. *Id.* His last visit was to Los Angeles in August 2005, where he stayed for one week to attend his daughter's wedding. *Id.* His illicit sexual conduct occurred between three and nine months after he returned to Cambodia. *Id.* at 681. The Ninth Circuit concluded that § 2423(c) would not apply to Mr. Pepe if he resided in Cambodia and was no longer traveling. *Id.* at 682. The Ninth Circuit overturned Mr. Pepe's conviction because the Government had not met its burden with respect to the travel element. *Id.* at 691.

In contrast to *Pepe*, the jury here was presented with overwhelming evidence that Mr. Johnson was still traveling at the time of the illicit conduct. While in Cambodia, Mr. Johnson lived at the orphanage. Def.'s Mot. 3. He traveled from the United States to Cambodia eleven times between 2005 and 2013. Gov.'s Resp. 5; *see* Jury Instructions 20–21. He never spent a year in Cambodia without returning to the United States during the relevant time frame. Gov.'s Resp. 6; *see* Jury Instructions 20–21. The periods during which each victim was abused correspond with Mr. Johnson's trips to Cambodia, each of which involved a return to the United States. Gov.'s Resp. 9. He had a car in the United States and applied for three credit cards using his Oregon address in 2009 and 2011. *Id.* at 6–8. Finally, his own statements to the U.S. government in 2006, 2010, and 2013 demonstrate that his travel in Cambodia and other neighboring countries was intended to be temporary. *Id.* at 8.

While it has limited precedential value, the Ninth Circuit has reviewed the applicability of § 2423(c) in a Memorandum Opinion at least once since deciding *Pepe*. *See United States v.*

*Abromov*, 741 Fed.Appx. 532 (9th Cir. 2018). As with Mr. Pepe and Mr. Johnson, Mr. Abromov argued that the illicit acts that were alleged to have occurred abroad occurred when he resided in Russia. The Ninth Circuit concluded that Abromov resided in Los Angeles because he had a Los Angeles driver's license, his children and ex-wife lived there, and in 2013 he wrote to a member of Congress that he had been a permanent resident there since 2000, though he had "visited" Russia several times. *Id.* at 532. Moreover, each of the charged acts took place soon after Abramov traveled from California to Russia and soon before he returned to California. *Id.* Mr. Johnson's case has much more in common with the facts that sustained Mr. Abromov's conviction than that of *Pepe*.

As to Counts 1 through 6, the jury found Mr. Johnson guilty of "traveling in foreign commerce and engaging in illicit sexual conduct in a foreign place." Verdict Form 1–4. The jury was instructed that "travel in foreign commerce" means "travel between any part of the United States and a foreign country." Jury Instructions 34. There was ample evidence before the jury to support their finding that Mr. Johnson was traveling in Cambodia at the time of the illicit acts. Mr. Johnson has not presented evidence that "weighs heavily" against the verdict. *See Del-Toro-Barboza*, 673 F.3d at 1153. Mr. Johnson has not met his burden of persuading this Court to grant a new trial, and certainly not to enter an acquittal.

Given the ruling regarding Counts 1 through 6, this Court need not address Mr. Johnson's spillover argument pertaining to Counts 7 and 8. *See* Def.'s Mot. 13–15; Gov.'s Resp. 10–14.

## II.     Constitutionality of § 2423(c)

Mr. Johnson renews his Motion to Dismiss Counts 1 through 6 of the Superseding Indictment (ECF No. 59), arguing that § 2423(c) is unconstitutional as applied to him because he resided abroad and engaged in non-commercial sexual conduct. Def.'s Mot. 15–18.

The Ninth Circuit upheld § 2423(c) in *United States v. Clark*. 435 F.3d 1100, 1116 (holding that Mr. Clark's travel in foreign commerce and illicit commercial sex act "put the statute squarely within Congress's Foreign Commerce Clause authority."), *rev'd on other grounds in Pepe*, 895 F.3d 679. The Ninth Circuit declined to address the statute's constitutionality in *Pepe*. *See* 895 F.3d at 690.

Further, as explained above, Mr. Johnson was not a resident of Cambodia at the time of the illicit sexual conduct. He also gave food and shelter to each victim, in addition to money and gifts in some cases. This falls under the definition of "commercial sex act." *See* Jury Instructions 34 (instructing that it is "any sex act, on account of which anything of value is given to or received by any person."). The jury accordingly found that Mr. Johnson "knowingly engaged in a commercial sex act" with each of the minors in Counts 1 through 6. Verdict Form, 1–4. Section 2423(c) is constitutional as applied to Mr. Johnson.

### III. Alleged *Brady* Violations

Lastly, Mr. Johnson alleges that the Government failed to produce material impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Def.'s Mot. 19–22. Specifically, he alleges that the Government was required to disclose any post-verdict communications between government agents and witnesses who testified that he abused them because they may have testified in pursuit of immigration-related benefits. *Id.* at 21. He also alleges that the Government has failed to fully disclose payments made to witnesses and the Cambodian National Police. *Id.*

*Brady* requires that the prosecution disclose exculpatory and impeachment evidence to the defendant. *United States v. Alvarez*, 358 F.3d 1194, 1206 n.4 (9th Cir. 2004) (citing *Brady*, 373 U.S. at 87; *United States v. Bagley*, 473 U.S. 667 (1985)). A new trial is warranted where the

7—ORDER

evidence undermines the court's confidence in the outcome of the trial and there is a "reasonable probability" of a different result. *United States v. Doe*, 705 F.3d 1134, 1152–53 (9th Cir. 2013) (citing *Bagley*, 473 U.S. at 682). In determining whether a new trial is warranted, courts consider the cumulative effect of all the violations. *Kyles v. Whitley*, 514 U.S. 419, 436 n.10 (1995).

Mr. Johnson cannot show that any potential *Brady* violation impacted the outcome of the trial. The Government concedes that a witness asked an FBI victim witness specialist about possible immigration benefits after the trial. Gov.'s Resp. 18. However, this does not raise questions about his testimony, and it is consistent with the desires he evinced on the stand. He and several other victims testified that they were interested in possible immigration benefits post-trial. *Id.* Therefore, Mr. Johnson's counsel had the opportunity to, and in fact did, cross-examine them about their interests and discussed the issue at closing. *Id.* at 18–19. The Government also maintains that it has disclosed all known payments to other entities and Mr. Johnson's counsel discussed that in closing as well. *Id.* at 20–21. For these reasons, a new trial based upon newly discovered evidence is not warranted.

## CONCLUSION

Mr. Johnson has not shown that *Pepe* warrants a new trial, that § 2423(c) is unconstitutional, or that the Government committed a *Brady* violation warranting a new trial. Therefore, Mr. Johnson's Motion is DENIED.

IT IS SO ORDERED.

DATED this 17th day of January, 2019.

                                          **Michael J. McShane**
                                          **United States District Judge**